THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DIONELL PAINE, Defendant-Appellant.

First District (1st Division)   No. 1—86—1231

Opinion filed December 27, 1988.—Rehearing denied June 2, 1989.—
Modified opinion filed June 5, 1989.

Steven Clark, Paul Alexander Rogers, and Debra R. Salinger, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

The defendant, Dionell Paine, was charged by indictment with armed robbery, unlawful restraint and armed violence. Following a bench trial, the defendant was found guilty of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), and sentenced to 10 years' imprisonment. We are called upon to determine: (1) whether the trial court properly denied the defendant's motion to quash arrest and suppress evidence; (2) whether the trial court abused its discretion in allowing the prosecution to introduce Rodney Mitchell's prior inconsistent statement for purposes of impeachment and as substantive evidence; and (3) whether section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 115—10.1), authorizing the substantive use of prior inconsistent statements, is constitutional; and (4) whether the enactment of the statute was within the legislature's authority.

Prior to trial, the defendant filed a motion to quash arrest and suppress evidence. At the hearing on the motion, Officer Ronald Robinson testified that on July 9, 1985, the day of the armed robbery of the Top Value Beauty Supply, he interviewed Rodney Mitchell, one of the men arrested for the armed robbery. Mr. Mitchell identified Ronald Stewart (a/k/a Bimbo) as his accomplice to the armed robbery. Subsequently, Derrick Richardson, one of the victims, stated that Ronald Stewart was not a participant in the robbery. Mitchell then named Dionell Paine as his accomplice and provided Officer Robinson with the defendant's address as 1311 South Christiana, Chicago, Illinois. This was the same address that Mitchell was seen entering into immediately after the robbery by the victim, Richardson. Officer Robinson and Mitchell went to that address, but the defendant was not there. Thereafter, Officer Robinson drove Mitchell to the 11th District police station, where Mitchell provided Officer Robinson with a description of the offender.

Although this description was received on July 9, 1985, the defendant was not arrested until July 17, 1985, when Officer Robinson and his partner received information from a citizen that the defendant would be meeting that citizen at 3401 West Roosevelt Road, Chicago, Illinois, at 10 p.m. The police and the citizen had prearranged a signal by which to identify the defendant upon his arrival at that location. The signal was given when the defendant and the citizen met, and Officer Robinson approached the defendant and two other men and asked them to identify themselves.

Upon recognizing the name and address given by the defendant as being the same name and address given by Rodney Mitchell, Officer Robinson placed defendant under arrest and then conducted a lineup at which defendant was identified by Derrick Richardson.

It was stipulated between the parties that on July 9, 1985, Richardson was unable to identify the defendant from a police photo book as one of the robbers, although the defendant's picture was included in the book. It was also stipulated that on that same date Rodney Mitchell was shown that same photo book and did identify Dionell Paine as his accomplice. The trial court denied defendant's motion to quash arrest and suppress evidence.

During the trial it was stipulated between the parties that Rodney Mitchell gave a signed, written statement on July 9, 1985, to Assistant State's Attorney Michael Kelly, naming Dionell Paine as his accomplice in the robbery of the Top Value Beauty Supply. Mitchell's written statement in summary reveals that he and the defendant met on July 9, 1985, at Roosevelt and Homan and discussed robbing the

Top Value Beauty Supply at 3402 West Roosevelt, Chicago, Illinois. Mitchell, in his statement, related that the defendant told him that he had a gun, and they proceeded to the Top Value Beauty Supply, where Mitchell went inside three times to see if anyone was inside. He further related that he then reentered the store followed by the defendant, who pulled a gun and shouted, "This is a stickup." Mitchell next threw some rope to the defendant to tie up one of the employees, leaped over a counter in the store and took some money out of the cash register.

The defendant went into the backroom of the store with Shirley Hubbard, the other employee, while Mitchell remained in the front of the store as a lookout. Thereafter, Mitchell and the defendant fled and the defendant gave Mitchell $15 to $20 for assisting him in the armed robbery. However, during Mitchell's trial testimony, he denied seeing the defendant on July 9, 1985. He further testified that he signed the written statement that implicated the defendant because he thought that he was helping himself. Mitchell pled guilty to the armed robbery and received the minimum sentence of six years' imprisonment.

Shirley Hubbard testified that she was working at the Top Value Beauty Supply on July 9, 1985, as a salesperson/cashier. She was in the rear of the store eating lunch and talking on the telephone when she noticed Derrick Richardson waiting on a customer who had previously been in the store purchasing hair products. Ms. Hubbard then saw that same customer jump over the counter, heard a loud crash and the words, "This is a stickup." Another person was in the rear of the store holding a gun to Richardson's head. The man with the gun told her to walk towards him and not look at him. They proceeded to the office, where he took some money out of the desk. Shortly after the robbery when the police returned to the store with Rodney Mitchell, after capturing him, Ms. Hubbard identified Mitchell as the offender without the gun. She was unable to identify the man with the gun since she did not see his face.

Derrick Richardson testified that he was also working as a cashier/salesman for the Top Value Beauty Supply when the robbery occurred. Just before the robbery Richardson noticed the defendant enter the store twice and quickly leave without purchasing anything. Thereafter, Mitchell came into the store to exchange the hair products that he had previously purchased. While Richardson was waiting on Mitchell, the defendant reentered the store, jumped over the counter, pulled out a gun and said "Don't anyone move, this is a stickup." While pointing his gun at Richardson, he instructed Richardson not to look at him. However, Richardson quickly looked directly at his face.

The defendant further instructed Richardson to lie flat on his stomach and proceeded to tie him up while Mitchell held the gun. Thereafter, Mitchell took money out of the cash register. The defendant, with a gun pointed at Shirley Hubbard's back, then walked with Shirley Hubbard to the office in the back of the store. After obtaining the money from Ms. Hubbard, the defendant returned to the front of the store, and Richardson saw the defendant and Mitchell jump over the counter and leave the store. Richardson looked out of the front window of the store and saw the defendant and Mitchell crossing the street. Richardson followed the defendant and Mitchell and saw Mitchell standing in the corridor of the 1311 South Christiana building.

Richardson lost sight of Mitchell and returned to the store, where he informed the police of Mitchell's whereabouts. They returned to the 1311 South Christiana building, but neither the defendant nor Mitchell was there. Subsequently, they returned to the store, where information was provided to Officers Vale and Bland by Mr. Horton. Richardson, Officers Vale and Bland and Mr. Horton then proceeded to the 1200 block of South Christiana where they located Mitchell, who was taken back to the store, where Ms. Hubbard identified him as one of the offenders.

Richardson further testified that while the police toured the area with him and Mitchell, looking for the accomplice, they located Ronald Stewart, whom Mitchell initially identified as his accomplice. However, Richardson stated that Stewart was not the second robber. Richardson was shown a photo album on July 9, 1985, at the police station which included a picture of the defendant. However, Richardson was unable to make a positive identification of the defendant. On July 17, 1985, however, Richardson positively identified the defendant, after viewing a lineup, as the man with the gun during the armed robbery. At the close of all the evidence, the defendant was found guilty of armed robbery and sentenced to 10 years' imprisonment.

The defendant contends that since the police lacked probable cause for a warrantless arrest, the trial court erred in denying the defendant's motion to quash the arrest and suppress the fruits of the arrest. The State argues that the defendant's motion was properly denied based on the totality of the circumstances known to the police officers when the defendant was arrested.

■■ ■ Whether or not a police officer has probable cause to make an arrest depends upon the totality of the circumstances known to the police officer when the arrest occurred. (*People v. Willingham* (1982), 89 Ill. 2d 352, 363, 432 N.E.2d 861; *People v. Cobb* (1983), 97 Ill. 2d 465, 485, 455 N.E.2d 31; *People v. Clay* (1973), 55 Ill. 2d 501, 504,

304 N.E.2d 280.) It is well established that probable cause exists and a warrantless arrest is valid when the facts and circumstances within the police officer's knowledge would cause a reasonable person to believe that an offense has been committed and that the person arrested has committed the offense. *People v. Wright* (1985), 111 Ill. 2d 128, 145, 490 N.E.2d 1313; *People v. Eddmonds* (1984), 101 Ill. 2d 44, 60, 461 N.E.2d 347; *People v. Reynolds* (1983), 94 Ill. 2d 160, 166, 445 N.E.2d 766; *People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605.

■ In determining whether police officers have probable cause to arrest, the courts must act upon probabilities based on the factual and practical considerations of everyday life upon which a reasonable man, not a legal technician, acts. (*People v. Wright* (1985), 111 Ill. 2d 128, 146, 490 N.E.2d 1313; *Illinois v. Gates* (1983), 462 U.S. 213, 231, 76 L. Ed. 2d 527, 544, 103 S. Ct. 2317, 2328; *Brinegar v. United States* (1949), 388 U.S. 160, 175, 93 L. Ed. 2d 1879, 1890, 69 S. Ct. 1302, 1310.) Moreover, a reviewing court will not substitute its judgment for that of the trier of fact on a motion to suppress unless that finding is determined to be manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766; *People v. Holloway* (1981), 86 Ill. 2d 78, 91, 426 N.E.2d 871.

■ On review of this record, in light of the totality of the circumstances, this case demonstrates that the police had probable cause to arrest the defendant at the time he was taken into police custody, and the trial court's determination that probable cause to arrest existed was not manifestly erroneous.

After wrongfully identifying his accomplice as Ronald Stewart, Mitchell subsequently identified Dionell Paine as his accomplice and related that he lived at the 1311 South Christiana address. Mitchell then went to the police station, where he identified the defendant as his accomplice from a police photo. Moreover, Mitchell provided a detailed written statement of the robbery, beginning with the meeting between the defendant and Mitchell at the intersection of Roosevelt and Homan on July 9, 1985, where they discussed robbing the Top Value Beauty Supply. Thereafter, on July 17, 1985, Officer Robinson and his partner were informed by a citizen that he would be meeting with Dionell Paine at 10 that evening at 3401 West Roosevelt and he would provide Officer Robinson with a prearranged signal when the defendant arrived. Upon arriving at 3401 West Roosevelt, the defendant was asked his name and address and he stated his name and gave his address as 1311 South Christiana. This was the same name and address given to Officer Robinson by Mitchell on July 9, 1985, in iden-

tifying his accomplice in the armed robbery.

■ Notwithstanding that Mitchell had previously misrepresented who his accomplice was and was a participant in the crime, the police had sufficient corroborating evidence which indicated that the defendant was the accomplice. The defendant asserts that information received from an accomplice must be corroborated to establish probable cause to arrest. However, to conclude that an uncorroborated statement by an accomplice can never establish probable cause is an inaccurate statement of the law. (*People v. James* (1987), 118 Ill. 2d 214, 222, 514 N.E.2d 998; *People v. Atkinson* (1974), 21 Ill. App. 3d 258, 261, 315 N.E.2d 152.) On the contrary, the accomplice statement must be viewed in light of the totality of the circumstances. Moreover, when a segment of an accomplice statement is verified by an independent source, the corroboration lends credence to the unverified portion of the statement. *People v. James* (1987), 118 Ill. 2d 214, 225, 514 N.E.2d 998; 1 W. LaFave Search & Seizure §3.3(f) (2d ed. 1987).

In the instant case, a portion of Mitchell's statement was corroborated by Derrick Richardson when Richardson testified that immediately after the armed robbery, he followed the defendant and Mitchell and observed Mitchell standing in the doorway of the 1311 South Christiana building. Later that day Mitchell was apprehended by the police in the 1200 block of South Christiana. Moreover, prior to arrest, it was the defendant who told the police that his name was Dionell Paine and stated his address as 1311 South Christiana. This name and address corresponded with the name and address of the person that Mitchell alleged was his accomplice in the armed robbery.

■ Notwithstanding the defendant's contention that Mitchell lacked credibility and reliability, the detailed confession provided by Mitchell regarding his participation in the armed robbery and the defendants involvement was very specific. Although the information used as a basis to establish probable cause must be supported by some indicia of reliability, courts have concluded that when a party provides information that serves as an admission against penal interest, there is an inherent indicia of reliability. (*People v. James*, 118 Ill. 2d 214, 222-23, 514 N.E.2d 998; *United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075.) In the case at bar, Mitchell provided a very detailed admission of his personal involvement in the armed robbery. Moreover, there is no indication in the record that Mitchell attempted to absolve himself of his participation in the offense. Nor does the record reveal that Mitchell was offered any inducement for implicating the defendant.

When Mitchell's statements are combined with Richardson's inde-

pendent corroboration, viewed in light of the totality of the circumstances, probable cause was established for the police to form a reasonable belief that the defendant was involved in the offense that had been committed. (See *People v. Cobb* (1983), 97 Ill. 2d 465, 485, 455 N.E.2d 31.) Therefore, we conclude that the trial court correctly determined that the warrantless arrest was supported by probable cause, and we will not disturb its finding.

The defendant next raises two issues that were not properly raised before the trial court. The defendant now argues that the trial court improperly allowed the prosecution to introduce Mitchell's prior inconsistent statement for purposes of impeachment and as substantive evidence. Next the defendant argues that section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 115—10.1), authorizing the use of prior inconsistent statements as substantive evidence, is unconstitutional. He supports this argument with assertions that the legislature infringed upon the rule-making power granted to the Illinois Supreme Court under the separation of powers clause of the Illinois Constitution. (Ill. Const. 1970, art. II, §1.) He further supports this argument with an assertion that section 115—10.1 of the Code of Criminal Procedure of 1963 is unconstitutional as a denial of due process.

The State contends that the failure of the defendant to raise an objection to the introduction of Mitchell's prior inconsistent statement during the trial has waived this argument. Moreover, the constitutionality of section 115—10.1 of the Code of Criminal Procedure of 1963 is not properly before this court since the defendant failed to raise this issue before the trial court. We agree with the State's contention that these issues are not properly before this court.

■■■ Our supreme court has recently held that to preserve an issue for review, "[b]*oth* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) We have observed an exception to the general rule of waiver where there has been plain error affecting substantial rights. (87 Ill. 2d R. 615(a); *People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227.) In a criminal case, where the evidence was closely balanced or the error denied the accused a fair and impartial trial, plain error may be invoked. *People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091; *People v. Pickett* (1973), 54 Ill. 2d 280, 283, 296 N.E.2d 856.

In the instant case, the defendant failed to raise an objection to the use of Mitchell's prior inconsistent statement even though he had

an opportunity to object to the use of the statement during Mitchell's testimony, when the statement was read into the record, and during closing arguments. Instead, the defendant stipulated to the prior inconsistent statement.

The defendant's constitutional challenge must also fail because he failed to raise this issue in his written motion for a new trial. Moreover, our supreme court has specifically held that the statute authorizing the use of prior inconsistent statements as substantive evidence was clearly within the legislature's authority. (*People v. Orange* (1988), 121 Ill. 2d 364, 381, 521 N.E.2d 69; *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 140, 461 N.E.2d 410.) The supreme court further noted that although it has not previously allowed the use of prior inconsistent statements as substantive evidence, this did not preclude the legislature from allowing such use since the legislature has the power to prescribe new rules of evidence or alter existing rules. *Orange*, 121 Ill. 2d at 381; *People v. Wells* (1942), 380 Ill. 347, 354.

Our review of the record does not reveal that the evidence was closely balanced or that the defendant was denied a fair trial. Therefore, we decline to invoke the plain error doctrine. We conclude that since the defendant failed to raise an objection to the use of Mitchell's prior inconsistent statement during the trial, and since the defendant failed to include his constitutional challenge in his written motion for a new trial, he is precluded from raising these issues on appeal.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.