THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES TERRY, Defendant-Appellant.

First District (1st Division)   No. 1—92—1786

Opinion filed May 2, 1994.

Turner & Wolff, of Chicago (Daniel H. Wolff, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant Charles Terry was convicted of unlawful use of a weapon and possession of a controlled substance in an amount greater than 100 grams. He was sentenced to concurrent 5-year and 10-year terms in the Illinois Department of Corrections. He appeals his convictions and sentences.

Chicago police officer Ernest Brown was the State's first witness at defendant's trial. He testified that on June 19, 1990, at about 2:50 p.m., he and his partners were in an unmarked police car at 1000 West 18th Street. They were at this location pursuant to a search warrant issued for defendant's apartment at that address. He had seen defendant on previous occasions and was familiar with his appearance. Brown observed defendant, accompanied by two females, exit the apartment building. Defendant and the women got into a car and drove away. Defendant was driving the vehicle. Brown then radioed to other officers in official police vehicles to stop defendant. Brown was present when defendant was stopped. He was placed under arrest, given his *Miranda* rights and informed of the search warrant. Defendant and the officers drove back to the apartment.

They entered the apartment through the back door, which led directly into the kitchen. Defendant was seated in a kitchen chair while the officers executed the warrant in his presence. Upon entering defendant's living room, Brown observed a clear plastic bag containing several smaller plastic bags of a white rock-like substance. The larger bag also contained rocky loose powder. Thereafter, Brown informed defendant that he was being charged in connection with the narcotics found in his apartment. Brown administered the *Miranda* warnings again.

Brown testified that defendant responded that he did not want his "woman and daughter involved in this, the drugs are mine." Next, according to Brown, defendant admitted that he had "a little .25 [pistol] in the cabinet in front." Brown recovered a fully loaded .25-caliber semi-automatic pistol from a cabinet in the living room. The following items were also confiscated from defendant's apartment: an Illinois Bell telephone bill in defendant's name to that address, Dorman pills, two pagers, a digital scale, a hanging scale and two photos of defendant.

The plastic bag containing the smaller bags was transported to the organized crime division, where it was inventoried according to regulations and submitted to the Chicago police crime lab for analyses.

Crystal Watson, a criminalist for the Chicago police department, testified that she analyzed inventory envelope 783193. She received the inventory in a sealed envelope with a police officer's signature on top of the tape. Inventory envelope 783193 contained a large plastic bag with six knotted plastic bags inside it. There were no puncture holes in any of the six bags. Watson could not recall whether the larger plastic bag was sealed.

On June 22, 1990, Watson tested two of the six bags contained in inventory envelope 783193. The weight of those two bags totalled 32.32 grams. After performing the tests, she heat sealed the two bags, noted the date and the weight on the bags and heat sealed them in the original bag. Watson testified that on April 16, 1991, she tested five of the six bags contained in inventory envelope 783193. The substance she tested was a dry white powder. The total weight of those bags was 102.6 grams. After her tests she returned the substance to the bags, indicating the weights and date, accompanied by her signature. She then placed the bags in their original bag and envelope and properly sealed them. Defendant stipulated that the substance tested on June 22, 1990, and April 16, 1991, tested positive for cocaine.

On cross-examination, Watson testified that she was not aware that cocaine could absorb moisture. On redirect examination, she opined that based on the sealed condition of the substance when she received it for testing, it "could not [have] absorbed moisture." Next, the parties stipulated that the substance inventoried was that recovered from defendant's apartment and also stipulated to the cocaine's chain of police custody. The State then rested.

Dr. Robert Moriarty, defendant's witness, testified that if "cocaine is left open in the atmosphere it would gain weight by absorbing moisture from the atmosphere." On September 30, 1991, he watched Watson reweigh inventory envelope 783193. At that time the substance weighed 101.76 grams.

On cross-examination, Moriarty testified that the probable reason the weight of the cocaine changed from 102.6 to 101.76 grams was because the higher weight reflects the weight of the substance prior to a test sample being removed. Moriarty further admitted that a person would need approximately one gram of the cocaine for testing. He additionally stated that when he observed Watson reweigh the cocaine, she had removed it from a sealed bag. He acknowledged that cocaine has a saturation point and that he had no way of knowing whether the cocaine recovered from defendant's apartment had reached that point prior to being confiscated by the police.

The appellate record for review skips to sentencing at this point

in defendant's case. We ascertained from the sentencing hearing transcript that the circuit court found defendant guilty of unlawful use of a weapon and sentenced him to five years. He was also found guilty of possession of a controlled substance over 100 grams and sentenced to 10 years. The sentences are to run concurrently. Defendant appeals his convictions and sentences. We affirm.

■ Defendant's first argument is that he was not proven guilty beyond a reasonable doubt of possession of more than 100 grams of a controlled substance. Citing *People v. Speed* (1982), 106 Ill. App. 3d 890, 436 N.E.2d 712, defendant argues that the State did not verify the accuracy of the scale used by Watson and, therefore, did not sustain its burden of proving the weight to be in excess of 100 grams. *Speed* involved an instance in which narcotics were measured on a scale at "Gleichman's Drug Store." Here, Watson testified that she weighed the cocaine at the crime laboratory with a fully calibrated electronic scale, which was tarried zero in order to take into consideration the weight of the weighing pan.

Defendant also contends that the record indicates that the State failed to set out a coherent narrative as to the recovery, handling, and testing of the cocaine and that two of the State's witnesses gave "diametrically opposed descriptions of the substance used to convict defendant." Firstly, the parties stipulated to the fact that the substance recovered from defendant's apartment and inventoried in envelope 783193 was cocaine. Secondly, the State did not have to set out a narrative of the handling or recovery of the cocaine because defendant also stipulated to the chain of custody. As for the testing, Watson sufficiently testified to her methods and results.

Defendant additionally argues that the State failed to prove that defendant was in possession of the narcotics. "Where narcotics are found on premises under the defendant's control, it may be inferred that he had the requisite knowledge and possession, absent other facts and circumstances which might leave a reasonable doubt as to guilt in the minds of the jury." (*People v. Frieberg* (1992), 147 Ill. 2d 326, 361, 589 N.E.2d 508, 524.) There was evidence that defendant resided in the apartment where the cocaine was found. Police confiscated pictures of him and a utility bill bearing his name and the apartment's address. In addition, Brown testified that men's clothing which would fit defendant was found in the bedroom closet. Moreover, defendant admitted that the cocaine was his. After reviewing all the evidence in a light most favorable to the State, we find that a rational trier of fact could have found defendant guilty of possession of a controlled substance in excess of 100 grams beyond a reasonable doubt. See *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ Defendant contends that the 10-year sentence he received for possession of a controlled substance in excess of 100 grams was unfair in light of the fact that the amount of the cocaine was over the minimum required to be convicted of this crime by only 2.6 grams. Determining the appropriate sentence to impose is a matter within the sound discretion of the circuit court and will not be disturbed absent an abuse of discretion. (*People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998.) In the case at bar, defendant had prior convictions for rape, kidnapping, and theft. He was also found in possession of a loaded handgun. After carefully reviewing the record, we conclude that the circuit court did not abuse its discretion in sentencing defendant to 10 years in the Illinois Department of Corrections.

■ Defendant also contends that the State failed to prove beyond a reasonable doubt all the elements of unlawful use of a weapon, and further alleged that he was denied a fair trial. Defendant, however, fails to cite any authority in support of these arguments. Therefore, pursuant to Supreme Court Rule 341(e)(7), defendant has waived review of these issues. 134 Ill. 2d R. 341(e)(7).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.