THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASON MARGENTINA, a/k/a Jason Erickson, Defendant-Appellant.

Third District    No. 3—92—0753

Opinion filed May 6, 1994.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

The defendant, Jason Margentina, a/k/a Jason Erickson, was convicted of first degree murder and sentenced to 50 years' imprisonment. He appeals the length of his sentence.

At trial, the evidence established that the 18-year-old defendant lived with Robert Margentina, his stepfather, and George Holloway, the 36-year-old victim, for approximately three to four weeks before the murder occurred. During the defendant's stay, tension existed between the defendant and Holloway, primarily due to Holloway's abuse of Robert Margentina's dog, Roxy.

The defendant testified that on March 16, 1992, he was at home when Holloway returned from work at 4 p.m. Holloway left the house shortly thereafter and returned about 8 p.m. When he returned home, he was intoxicated and began to abuse the dog. When the dog would not sit on the carpeting in a certain area, Holloway would hit it. After Holloway ignored the defendant's requests to stop hitting

the dog, the defendant became upset and went outside to have a cigarette and calm down. Holloway then went into the bathroom to ingest some cocaine, and the dog came over near the defendant. When Holloway came out of the bathroom, he was upset because the dog was off the carpeting. After he hit the dog again, he sat down on the love seat and watched television with the defendant. Holloway then made a derogatory comment about his former girlfriend whom the defendant had also dated.

The defendant said that when Holloway went into the bathroom again, the defendant got a gun out of the entertainment center cabinet and placed it on the couch next to him. He also placed a towel over the gun so that Holloway could not see it. When Holloway came out of the bathroom, he sat back down on the couch, gave the defendant a dirty look, and turned back towards the television. The defendant then took the gun out from under the towel and shot Holloway in the head twice. He next placed a garbage bag over the victim's head and bound his arms and feet with duct tape. He took Holloway's money from his wallet and wrote his stepfather a note saying, "Dad, I'm sorry, I just couldn't take it anymore." He then hitchhiked to a motel in Manteno, Illinois. At the close of evidence, the jury found the defendant guilty of first degree murder.

The presentence report showed that the defendant had an abusive childhood. His mother was an alcoholic and he had only seen his natural father three times in his life. According to the report, his mother once broke his nose, and he once witnessed his mother stab Robert Margentina. Robert was a drug user who had routinely injected himself with drugs in front of the defendant. The defendant was fairly gifted intellectually, but his emotional problems had prevented him from doing well in school. Additionally, he had been admitted to hospitals twice in the past, once for depression and once for self-inflicted lacerations to both arms. Further, he had prior juvenile convictions for unlawful use of a weapon, criminal damage to property, and aggravated assault.

At the sentencing hearing, Laura Stock, a juvenile probation officer, testified that she monitored the defendant's probation from May of 1990 until May of 1991. She had a total of 16 interviews with him. In her opinion, the defendant was unusually cooperative and responsible. She felt that he was a very intelligent young man who had a very cruel life and asked the court to show him mercy in sentencing.

Robert Margentina testified that the defendant's home life was very unstable. He lived with the defendant and his mother until the defendant was around seven years old. Later, the defendant lived

with a number of different individuals, including himself and Holloway, for short periods of time. He had approximately five or six different homes in 18 years. For about a year to 18 months before the shooting, the defendant lived with Robert and Holloway. Holloway repeatedly harassed the defendant, threatening to beat him up. Holloway hated the defendant because he thought the defendant was sleeping with his girlfriend. Holloway was violent when he was using cocaine and alcohol, which was often. The defendant later briefly moved out of Robert's house and lived with his aunt, but he returned to live with Robert and Holloway a few weeks before the shooting. Robert felt that the defendant was an affectionate person who loved animals but never received much love from anyone else.

Sheri Nick, the defendant's mother, testified that her son's upbringing was chaotic. She was an alcoholic, and Robert drank and abused drugs. Between 1979 and 1987 she and the defendant had lived in 10 different places. Based on the way he was raised, she expected him to be an alcoholic and a drug abuser, but he was neither.

After hearing the testimony offered by both the defendant and the State, including Holloway's family's statements, the trial judge sentenced the defendant to 50 years' imprisonment.

On appeal, the defendant argues that the trial court abused its discretion in sentencing him to 50 years' imprisonment when it failed to weigh such mitigating factors as the defendant's youth, background and potential for rehabilitation. We agree.

Following a conviction for first degree murder, a defendant may be sentenced to a term of not less than 20 years and not more than 60 years. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(a).) In making the sentencing decision, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

A trial court's sentencing decision may not be altered on review unless the trial court abused its discretion; in other words, if the sentence diverges from the purpose and spirit of the law. (*People v. Williams* (1990), 196 Ill. App. 3d 851, 554 N.E.2d 1040.) However, an abuse of discretion may be found even when a sentence is within the statutory limitations, particularly where the defendant is young and has rehabilitative potential. (See *People v. Brown* (1993), 243 Ill. App. 3d 170, 612 N.E.2d 14 (20-year-old defendant's 45-year sentence for first degree murder reduced to 30 years where the defendant's age and lack of a criminal record were not properly considered); *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606 (16-year-old

defendant's 30-year sentence for first degree murder reduced to 20 years when reviewing court found his rehabilitative potential not given adequate consideration based upon his age and lack of a significant criminal record).) In addition, a defendant's sentence may be reduced on the basis of rehabilitative potential where the defendant came from a poor social environment. (*People v. Kosanovich* (1979), 69 Ill. App. 3d 748, 387 N.E.2d 1061.) Finally, the fact that the defendant acted under strong provocation may be considered in mitigation. Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.1(a)(3).

We find that the trial court did not give sufficient consideration to the mitigating evidence. The record shows that the defendant had been raised in an environment that can only be described as terrible. He had been provoked by the victim's harassing conduct, and, like the defendant in *Steffens*, was still a teenager at the time of the offense. For these reasons, we find that the trial court abused its discretion in sentencing the defendant to a term that was over twice the minimum sentence.

Accordingly, the judgment of the circuit court of Will County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

BARRY and STOUDER, JJ., concur.