THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JONAH LAWRENCE, Defendant-Appellant.

First District (5th Division)    No. 1—93—2767

Opinion filed November 18, 1994.

Edward R. Vrdolyak, Ltd., of Chicago (Everett J. Cygal, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Timothy Felgenhauer, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

After a bench trial, defendant Jonah Lawrence (Lawrence) was convicted for the murder of Rosa Hopkins and for the concealment of her homicidal death. (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a)(1), (a)(2), 9—3.1(a).) He was given a sentence of 25 years' imprisonment in the Illinois Department of Corrections for the murder conviction and a concurrent sentence of 5 years' imprisonment for the concealment conviction. Lawrence now appeals, raising three issues: (1) whether he was denied a public trial because the court inadvertently turned off the public address system during the prosecutor's rebuttal argument; (2) whether he was proven guilty beyond a reasonable doubt of the crimes charged; and (3) whether the trial court committed reversible error by admitting only a portion of a written statement rather than its entirety. For reasons we shall discuss, we affirm the judgment entered against Lawrence.

The facts of this case, gleaned from the trial testimony of several individuals, are as follows. Lawrence was a member of the Dirty Dozen Motorcycle Club, a social club which has been in existence since the 1960's and has a clubhouse located at 718 East 63rd Street in Chicago. On January 14, 1992, Lawrence's friend, Vincent Tolbert (Tolbert), who was also a member of the Dirty Dozen, accompanied Jack Lawrence (Jack), Lawrence's brother, to Cook County jail, where Lawrence was jailed on an unrelated charge. Tolbert and Jack secured Lawrence's release at approximately 11:30 p.m. that evening by posting bond. After his release from jail Lawrence went to the Dirty Dozen clubhouse, where other club members were present, including Rosa Hopkins (Hopkins), the victim.

Claude Howard (Howard), another member of the Dirty Dozen, testified at trial that he arrived at the clubhouse between 10:30 and 11 p.m. on January 14, 1992, and remained there until about 3 a.m., when he left the clubhouse accompanied by Lawrence, Hopkins, and Darlene Donner. Howard testified that he dropped Lawrence and Hopkins off in front of Lawrence's home and then drove Donner to her home. This was verified by Donner. Donner also testified that she received a phone call from Hopkins the morning of January 15, 1992, but never heard from or saw Hopkins again after that.

James Hicks (Hicks), another member of the Dirty Dozen, testified that on January 14, 1992, he went to the clubhouse and saw Lawrence sitting with Hopkins. On the following evening, Hicks again saw Lawrence at the clubhouse and he asked Lawrence if he "got Hopkins last night." Lawrence answered, indicating that he had had sexual contact with Hopkins. However, the following night, when Hicks talked with Lawrence again, Lawrence denied that he and Hopkins had been together.

Hicks further testified that he saw Tolbert enter the clubhouse on the evening of January 15, 1992, and saw Lawrence approach Tolbert. Soon thereafter Lawrence and Tolbert left the clubhouse together. Tolbert verified this testimony.

Tolbert testified that the evening of January 15, 1992, he went to the clubhouse, where he saw Lawrence. Lawrence asked if he could speak with him and they went outside to conduct their conversation. Lawrence then asked Tolbert to go with him to his garage to work on Lawrence's motorcycle. Tolbert agreed and got into Lawrence's van. From there they went to a nearby gas station where Lawrence gave Tolbert a dollar to get some gas in a gas container. Tolbert obtained the gas and then got back into the van. Lawrence and Tolbert were seen at the gas station by another witness.

Lawrence and Tolbert then drove to Lawrence's garage, but did not enter. Instead, Tolbert testified that Lawrence told him that he had "hung a nigger" and needed his help. Tolbert replied that he did not want to be involved, but did not get out of the van.

According to Tolbert, Lawrence then drove to an alleyway at 68th and Normal and parked. Lawrence got out and went around to the double doors on the side of the van and opened them. When he did so, the torso of a body fell out. Lawrence dragged the body out of the van by the arms and, as he did, the sheet covering the body fell away. Tolbert recognized the body as that of Rosa Hopkins, whom Tolbert had known for more than a year.

After removing the body from the van, Lawrence retrieved the gas can and poured gasoline on Hopkins' body. Lawrence asked Tol-

bert to light a match, but when he refused, Lawrence struck the match himself and tossed it onto the gasoline-soaked body of Hopkins, setting it on fire. Lawrence returned to the van and drove away, saying to Tolbert, "The bitch owed me $750." Tolbert and Lawrence then went to the J&J lounge, located across the street from the clubhouse.

Officer Gibson, a Chicago police officer, testified that about 10 p.m. on January 15, 1992, he responded to a radio dispatch. He traveled to 6812 S. Normal, where he found the smouldering body of a black female on the ground behind an abandoned building.

It was also stipulated at trial that an assistant Cook County medical examiner, if called, would testify that Hopkins' autopsy revealed, in addition to extensive full thickness burns to her body, that her death was caused by strangulation.

Based upon this evidence, the trial court found Lawrence guilty of the murder of Rosa Hopkins and concealment of her homicidal death. On appeal, Lawrence's counsel presents some persuasive arguments. Nonetheless, we must affirm Lawrence's convictions and the trial court's judgment.

■ The first issue concerns the inadvertent shut-off of the public address system during the prosecution's rebuttal argument at the close of trial. Relying on *People v. Ramey* (1992), 237 Ill. App. 3d 1001, 606 N.E.2d 39, Lawrence contends that, because the courtroom used in this case contains a heavy glass barrier separating the gallery from the courtroom, the inadvertent action of turning off the microphone constituted a closure of the trial from public access, thus depriving him of his sixth amendment right to a public trial. He concludes that a new trial is necessary. We disagree.

It is true that the *Ramey* case, cited by Lawrence, stands for the proposition that a defendant's constitutionally guaranteed right to a public trial may be compromised when the public address system is made inoperable. However, *Ramey* is factually distinguishable from the case at bar. In *Ramey*, the trial court deliberately ordered the public address system to be shut off, over defendant's objection, for the entire closing argument. In addition, the reviewing court determined, during oral argument on appeal, that members of defendant's family were actually cleared from the courtroom and denied access.

In the present case the sole reference to the microphone being shut off is a comment made by the court:

"THE COURT: I turned the microphone off. Pardon me.

By rubbing the chair, I turned the microphone off."

Immediately after this comment a recess was taken. However, we

have no way of knowing what transpired during this time since there is nothing on the record regarding this recess.

There is also no record of the length of time that the microphone was shut off, although the trial judge indicated during the hearing on defendant's post-trial motion for new trial that the incident occurred only for a period during the State's rebuttal argument. In any event, defense counsel never objected to the incident. Nor did defense counsel seek to have the situation remedied by asking that the portion of argument be repeated for the benefit of the spectators. Based upon these circumstances, we conclude that the error was waived by defendant. See *United States v. Griffin* (5th Cir. 1976) 527 F.2d 434 (impermissible closure of proceedings due to defective public address system waived by failure to object or request continuance).

■ The next issue raised by Lawrence is the sufficiency of the evidence. Lawrence contends that he was not proven guilty beyond a reasonable doubt because the evidence against him is circumstantial and the witnesses were incredible.

Although it is true that the evidence in this case was, to a large extent, circumstantial, a conviction may be sustained on wholly circumstantial evidence. (*People v. Cruz* (1984), 129 Ill. App. 3d 278, 472 N.E.2d 175.) In this case the evidence included some direct evidence and we find it was sufficient to establish defendant's guilt beyond a reasonable doubt.

The circumstantial evidence that was before the court showed that Lawrence was the last person to be seen with the victim while she was alive, that the victim was not seen by anyone between January 14 and January 15, 1992, and that Lawrence was in possession of the victim's dead body on the evening of January 15, 1992. In addition, however, Tolbert testified that Lawrence asked for his help because he had "hung a nigger." Lawrence then, in Tolbert's presence, dragged the body of the victim, who was found to have died of strangulation, from his van and set it on fire. After doing so, Lawrence told Tolbert that "the bitch owed me $750." These admissions by defendant are direct evidence, not circumstantial evidence.

When viewing this evidence in a light most favorable to the prosecution, we believe that a rational trier of fact could have found that Lawrence committed the crimes charged beyond a reasonable doubt. Since this is the standard by which we must review this matter (*People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267), we must affirm Lawrence's convictions.

Furthermore, any determination as to Tolbert's credibility is best

left to the trier of fact, and this court must not substitute its own judgment unless the testimony is so unsatisfactory, implausible or impractical that a reasonable doubt as to defendant's guilt is raised. (*People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317.) Because we do not find that Tolbert's testimony fits this criterion, the trial court's judgment as to Tolbert's credibility must stand.

In this case, Tolbert testified that he purchased gasoline at Lawrence's behest and they were seen at the gas station by another witness. Also, the smouldering body of the victim was found in the location indicated by Tolbert. These facts constituted corroboration of Tolbert's testimony.

■ In his last issue on appeal, Lawrence charges error to the trial court's ruling on the admission of certain evidence. Specifically, Lawrence contends that a written statement that James Hicks had given to police should have been admitted at trial, in its entirety, as substantive evidence pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (Code). (725 ILCS 5/115—10.1 (West 1992).) The trial court found that portions of the statement were not inconsistent with Hicks' trial testimony and admitted only portions of the statement as substantive evidence. We find that the trial court ruled properly.

There is no question that Illinois statutory law permits prior inconsistent statements of a witness to be admitted as substantive evidence. Section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 1992)) sets forth the conditions under which this may be accomplished. This statute provides as follows:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness has personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledges under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.

Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein."

The first and foremost criterion for admissibility pursuant to this statute is that the witness' trial testimony be inconsistent with his prior statement. Thus it was not only proper, but required, for the trial court to determine whether the written statement, which defendant sought to have admitted as substantive evidence, was inconsistent with his trial testimony and to admit only those portions which were actually inconsistent.

In the present case, Lawrence contends that Hicks' entire written statement should have been admitted to show that it failed to contain any reference to his observation of Tolbert and Lawrence at the clubhouse on January 15, 1992, and that this was "inconsistent" with his trial testimony, wherein he testified that he saw Lawrence approach Tolbert and the two then leave together. We do not agree, however, that the omission of this evidence from Hicks' written statement made it inconsistent with Hicks' trial testimony. Rather, we feel that this situation is similar to the situation in *People v. Redd.*

In *People v. Redd* (1990), 135 Ill. 2d 252, 553 N.E.2d 316, our Illinois Supreme Court found that a witness' prior out-of-court statement should not have been admitted at trial as substantive evidence because the witness' in-court assertion of his fifth amendment privilege could not be considered "inconsistent" with his prior statement for purposes of this statute. So, too, in this case. When certain evidence is omitted from an earlier statement, but later found to be relevant and testified to at trial, this does not constitute an inconsistency for the purposes of this statute.

For all the reasons stated above, we affirm Lawrence's convictions and sentence.

Affirmed.

GORDON and McNULTY, JJ., concur.