THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONNIE ADAMS, Defendant-Appellant.

First District (4th Division)   No. 1—93—0694

Opinion filed September 5, 1996.

People's Law Office, of Chicago (Micky Forbes and Jeffrey H. Haas, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Kenneth T. McCurry and Owen D. Kalt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a jury trial, defendant, Donnie Adams, was found guilty of the first-degree murder of Tony Johnson and sentenced to 40 years in prison. On appeal, defendant argues: (1) the trial court erred by refusing to allow witness Marvin Winters to invoke his fifth amendment right against self-incrimination; (2) the trial court erred by refusing to hold a hearing to determine whether Winters' prior inconsistent statements were voluntarily given; (3) the trial court erred by admitting Winters' prior inconsistent statements as substantive evidence; (4) defendant was denied a fair trial when the State failed to complete impeachment of him; and (5) the "cumulative impact" of the above-stated errors denied him a fair trial. We affirm.

Marvin Winters testified before the grand jury on January 14, 1992, that he saw defendant shoot Tony Johnson. On September 14, 1992, Winters' counsel informed the trial judge that Winters' grand jury testimony was false. Further, Winters wished to invoke his fifth amendment right against self-incrimination during defendant's upcoming trial, because he feared if he testified truthfully that he did not see defendant shoot Johnson, the State would bring perjury charges against him. The State contended Winters could not invoke the fifth amendment right against self-incrimination at defendant's trial, because his testimony would not implicate him in the crime for which defendant was being prosecuted. The trial judge also expressed concern about setting a precedent whereby "anyone who testified before the grand jury who later had second thoughts" could assert the fifth amendment at trial. Accordingly, the trial judge ruled that Winters could not invoke the fifth amendment.

At trial, Felicia Spivey testified that at about 1:40 p.m. on January 10, 1992, she and Tony Johnson were walking in the 1300 block of North Laramie. She saw defendant come out of a gangway and start to quickly walk toward them. Spivey noticed that defendant "had a look on his face like he hated [Johnson]" and she told Johnson to look at the "strange person" coming toward them.

Spivey testified defendant pulled his hat down to his eyebrows, walked close to Johnson, and said "Remember me?" Johnson did not respond, and then defendant pulled a gun out of his pants and fired four or five shots at Johnson.

Spivey testified Johnson fell on top of her, and they rolled off the sidewalk onto the street. Spivey was then taken to Mt. Sinai Hospital. On January 13, Spivey viewed a lineup and identified defendant.

The State called Marvin Winters, who reiterated his request to plead the fifth amendment. Outside the presence of the jury, the trial judge informed Winters that she had already determined he had no fifth amendment privilege in this case, and she directed him to answer the questions posed to him at trial. Defense counsel informed the judge that if the State attempted to impeach Winters with his prior statements, the defense would like a sidebar hearing to determine whether those statements were voluntary. The judge ruled such a hearing would not be proper because the circumstances surrounding Winters' prior statements could come out on cross-examination.

Winters then testified before the jury that he was on the 1300 block of North Laramie at the time Johnson was shot, but he denied seeing defendant there. The State impeached Winters with his statement to Assistant State's Attorney Noonan on July 13, 1992, and his testimony before the grand jury on January 14, 1992, in which Winters admitted to seeing defendant shoot Johnson at about 1:50 p.m. on January 10, 1992.

On cross-examination, Winters stated that on January 12, 1992, a group of armed men beat him and told him to tell the police that defendant was the person who shot Johnson. Defense counsel asked Winters whether he had seen who shot Johnson, and Winters replied he had "seen the person from behind, *** [and] assumed it was [defendant]." Defense counsel then asked Winters, "[T]hat wasn't [defendant] out there shooting, was it?" Winters replied that from his "view," he knew defendant was the shooter.

After the State rested, defendant took the stand and testified he was at Laramie and Crystal at about noon on January 10, 1992, and he saw Johnson crossing the street. However, defendant denied shooting Johnson. On cross-examination, defendant testified he went home at 1 p.m. on January 10 and stayed there until 3 p.m. He then went to the home of his uncle, MC Winters, and stayed there until 4:30. Defendant denied calling Marvin Winters on January 10 and stating he was going to say he was with MC at the time of the shooting. Defendant also denied asking MC to be an alibi witness for him.

The jury found defendant guilty of first-degree murder, and the trial court sentenced him to 40 years in prison. Defendant filed this timely appeal.

First, defendant argues the trial court erred when it refused to allow Marvin Winters to invoke his fifth amendment right against self-incrimination based on his belief that, if he testified at trial, the State would bring perjury charges against him. Defendant contends he was prejudiced thereby, because if the trial court had allowed

Winters to assert the fifth amendment, the jury would not have heard Winters' prior statements that he saw defendant shoot Johnson.

■ The State responds that defendant does not have standing to raise this issue. We agree. It is well established that the constitutional privilege against self-incrimination is a *personal* privilege belonging only to the person testifying (see *People v. Homes*, 274 Ill. App. 3d 612, 619 (1995); *Couch v. United States*, 409 U.S. 322, 34 L. Ed. 2d 548, 93 S. Ct. 611 (1973); *People v. Shockey*, 67 Ill. App. 2d 133, 139 (1966)), even where that person's testimony also incriminates defendant. *United States ex rel. Falconer v. Pate*, 319 F. Supp. 206 (N.D. Ill. 1970), *aff'd*, 478 F.2d 1405 (7th Cir. 1973); *United States v. Bruton*, 416 F.2d 310 (8th Cir. 1969). The personal nature of the fifth amendment privilege precludes defendant from claiming any error based on the trial court's refusal to allow Winters to assert the privilege at trial.

Defendant contends, though, he has standing pursuant to *In re Grand Jury Proceedings*, 814 F.2d 61 (1st Cir. 1987). We disagree. There, the United States Court of Appeals for the First Circuit held that defendant had standing to challenge (a) whether a letter sent to recipients of a grand jury subpoena *duces tecum* violated provisions of Federal Rule of Criminal Procedure 6(e)(2), which govern the limits of grand jury secrecy; and (b) whether the purpose of the grand jury investigation was to improperly collect evidence for use in another case in which defendant had already been indicted. The court distinguished between the standing requirements of cases of that nature, in which the allegations of grand jury abuse gave defendant standing, and those involving claims of fifth amendment privilege, which are inherently personal and may not be asserted vicariously. *In re Grand Jury Proceedings*, 814 F.2d at 67. The present case involves a claim of fifth amendment privilege, not grand jury abuse, and, therefore, *In re Grand Jury Proceedings* is not applicable.

Second, defendant argues the trial court erred when it allowed Winters' prior inconsistent statements to be substantively admitted under section 115—10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10.1 (West 1992)) without first holding a hearing to determine whether those statements were voluntarily given. In support, defendant cites *People v. Johnson*, 255 Ill. App. 3d 547, 559 (1993), which held that before a prior inconsistent statement is admissible as substantive evidence, the trial court must find there is a sufficient evidentiary basis from which a jury could find that the declarant's prior statements were knowing and voluntary. The State does not dispute that Winters' prior inconsistent statements were substantively admitted, but it argues the trial court committed no er-

ror in refusing to hold a hearing to determine whether those statements were voluntarily given.

■ The record before us, however, indicates Winters' prior inconsistent statements were admitted for impeachment purposes only, not as substantive evidence. We base this conclusion on the following factors: (a) when the State questioned Winters about his prior inconsistent statements, it did not ask that the statements be admitted as substantive evidence; (b) during closing argument, when defense counsel quoted Winters' prior inconsistent statement, the State objected on the grounds that the prior statement "wasn't admitted into evidence ***. It was used for impeachment purposes"; and (c) without objection, the trial court gave the following version of Illinois Pattern Jury Instructions, Criminal, No. 3.11 (2d ed. 1981):

> "The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case.
>
> Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom."

Having determined Winters' prior inconsistent statements were admitted for impeachment purposes only, we need not address defendant's argument that before admitting a prior inconsistent statement as substantive evidence, the trial court *must* find the statement was knowing and voluntary.

Defendant contends, though, that even if the statements were admitted for impeachment purposes only, there is no case law holding that the trial court *could not* hold a hearing to determine whether those statements were voluntarily given. Therefore, defendant argues the trial court erred when it determined as a matter of law that it lacked the discretion to hold such a hearing.

■ However, we find no indication in the record that the trial judge denied defendant's request for a hearing on the voluntariness of Winters' prior statements because she believed she lacked the discretion to hold such a hearing. When denying defendant's request for a hearing, the trial court stated, "He's not the defendant. As far as whether they are voluntary, he's a witness. As to having a hearing, I don't think that's proper. That's where if you had that information, that can come out in cross-examination. That's the whole purpose of cross-examination, to challenge the veracity of the witness."

Thus, the trial court denied the hearing because it felt defense counsel could raise at trial the issue of the voluntariness of Winters' prior statements. We find no abuse of discretion by the trial court.

Third, defendant argues the trial court erred when it admitted Winters' prior inconsistent statements as substantive evidence. As discussed above, those statements were admitted for impeachment purposes only.

■ Fourth, defendant argues the State cross-examined him concerning statements he allegedly made about using his uncle MC as an alibi, but failed to present appropriate rebuttal testimony after he denied making those statements. Defendant contends it was error for the State to ask him questions presuming facts not in evidence as a precursor to impeachment, unless the State had evidence to substantiate the inquiry. In support, defendant cites *People v. Nuccio*, 43 Ill. 2d 375 (1969). There, the trial court found Nuccio, a police officer, guilty of murdering a 19-year-old man near Franksville. The supreme court reversed and remanded for a new trial after quoting at length nine pages of "cross-examination by which the State repeatedly insinuated, generally without any supporting testimony, that defendant and his witnesses had engaged in a pattern of reprehensible conduct in their relationships to the youths who frequented Franksville." *Nuccio*, 43 Ill. 2d at 381. The supreme court held:

"Where *** the guilt of the accused is not manifest, but is dependent upon the degree of credibility accorded by the trier of fact to his testimony and that of the witnesses who testify on his behalf, and there appear in the record substantial numbers of unsupported insinuations which, if considered, could have seriously impeached the credibility of the defendant and his witnesses, *** it is our opinion that justice and fundamental fairness demand that the defendant be afforded a new trial free from such prejudicial misconduct." *Nuccio*, 43 Ill. 2d at 396.

Cases subsequent to *Nuccio* have also held that the incomplete impeachment of a witness is reversible error only when the unfounded insinuation is substantial, repeated, and definitely prejudicial. *People v. Amos*, 204 Ill. App. 3d 75, 82 (1990).

The complained-of cross-examination here is as follows:

"Q. Did you call Marvin Winters on the afternoon of January 10, 1992, and tell him I got an alibi. I'm going to say I was with my uncle MC. Did you make that conversation to Marvin Winters?
A. No.
Q. You never did?
A. No.
Q. Did you call Marvin Winters on the night of January 10th?
A. No.
Q. Did you call Marvin Winters and ask him if Tony was dead?
A. No.
Q. And you didn't call him and tell him you're going to use your uncle as an alibi either; right?

A. No.

\* \* \*

Q. Did you ever ask MC if he would be an alibi witness for you?
A. No.
Q. You didn't?
A. No."

Such cross-examination does not approach the nine pages quoted at length in *Nuccio*, which were found to be "substantial." See *Nuccio*, 43 Ill. 2d at 384-92. Further, given the testimony of Felicia Spivey identifying defendant, and the testimony of Marvin Winters, in which he first denied seeing defendant at the time Johnson was shot, but later admitted he knew defendant was the shooter, we cannot say the outcome of the trial would have been different had the cross-examination not occurred. Accordingly, we find no reversible error.

■ Finally, defendant argues the "cumulative impact" of the trial errors denied him a fair trial. We disagree. Defendant is rearguing the same alleged errors that we have already found do not necessitate a new trial.

For the foregoing reasons, we affirm the trial court. As part of our judgment, we grant the State's request and assess defendant $150 as costs for this appeal.

Affirmed.

CAHILL and THEIS, JJ., concur.