THIRD DIVISION 

September 16, 1998 

(
NUNC
 
PRO
 
TUNC
 AS OF AUGUST 26, 1998)

No. 1--96--3245

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of 

Plaintiff-Appellee, ) Cook County.

)

v. ) 

) 

GASTON GOVEA, ) Honorable 

) Fred G. Suria,

Defendant-Appellant. ) Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Following a jury trial, defendant Gaston Govea was found guilty of first degree murder and sentenced to 34 years' imprisonment.  On appeal, defendant argues that: (1) the trial court committed reversible error in admitting as substantive evidence the written statement and grand jury testimony of a witness because both were obtained in violation of the witness' right to due process under the fourteenth amendment and, since they were admitted into evidence, defendant's right to due process was violated; (2) the statement and grand jury testimony were not inconsistent with the witness' trial testimony and therefore should not have been admitted; (3) the trial court erroneously denied defendant's motion to suppress his oral and written statements because they were obtained in violation of his fifth and fourteen amendment rights under the United States Constitution against self-incrimination; (4) defendant was denied a fair trial and the effective assistance of counsel because his counsel failed to move to suppress the illegal arrest and subsequent statement of a witness, which led to defendant's implication in the murder and his subsequent statement as fruit of the poisonous tree; and (5) the trial court committed reversible error in sentencing defendant to 34 years' imprisonment.  For the reasons set forth below, we affirm.

Defendant was charged with first degree murder in the shooting of Fillamon Ibarra-Saucedo (Saucedo).  Prior to defendant's trial, defendant filed a motion to suppress his oral and written statements.  At the hearing on his motion, Detective Karen Hansen of the Chicago Police Department testified that she investigated Saucedo's shooting which occurred at the LaAlondra tavern in Chicago on October 3, 1994.  On October 5, Hansen and Detective Dennis Walsh arrested defendant at his place of employment.  Hansen advised defendant of his 
Miranda
 rights in the police car in the presence of Walsh.  

Detective Hansen further testified that defendant was transported to Area 4 where he was put into an interview room at around 1 p.m.  At 4:15 a.m., defendant participated in a lineup.  At approximately 5 a.m., Hansen and Walsh interviewed defendant for 10 minutes after informing defendant of his 
Miranda
 rights.  At 8 a.m., defendant was again read his 
Miranda
 rights, and Hansen and Walsh had another brief interview with defendant in the presence of Assistant State's Attorney Gregory Vaci (Vaci).  Hansen and Vaci next spoke with defendant at 11:25 a.m. in the presence of a court reporter.  After defendant received another 
Miranda
 warning and had indicated he understood his rights, defendant and Vaci had a conversation about defendant's knowledge of Saucedo's shooting.  During this series of conversations, defendant implicated himself in the shooting of Saucedo.  Detective Hansen testified that defendant never stated that he was threatened during police custody, nor did he ever request an attorney or a cessation of the interview.  Defendant was offered food and was allowed to use the bathroom when requested.  Hansen also stated that no one harmed defendant at Area 4 or promised him that he could go home after giving a statement.  

Defendant testified at the hearing that while he was at work, Detectives Hansen and Walsh arrested him and placed him in a police car where they gave him 
Miranda
 rights.  During the ride, the officers "got smart" with defendant and told him how his "action was bad."  Defendant arrived at the police station and he was placed in a room where he sat on the floor.  Defendant was handcuffed at the time.  Defendant further stated that when the officers came in to talk to him, he told them he did not want to talk and that he wanted to make a phone call to his family and to contact his attorney.  Hansen responded that it was "too late," and the officers kept questioning him.  Defendant also stated that Officer Bribiesca hit him two or three times.  Prior to defendant's court reported statement, Hansen allegedly told defendant that she "already knew what happened" and that defendant "might as well just go along with it" if he wanted to go home.  Hansen also told him that Saucedo was an "asshole" and "deserved" being shot.  Defendant also testified that he was only offered food after he made a statement.  Defendant further testifed that when Vaci came into the room prior to taking his statement, he asked defendant if defendant wanted food, to which defendant responded that he had already eaten two sandwiches.  Defendant also stated that the officers gave him 
Miranda
 rights before he gave his transcribed statement, and he told the officer that he understood those rights and that he, in fact, understood them.   At the conclusion of the hearing, the trial court denied defendant's motion to suppress, finding that defendant's statement itself denied almost all the allegations he made at the hearing, and that, "by defendant's own words," he admitted to having received 
Miranda
 warnings and agreed that he was not mistreated by the police.  The court further found that under all the circumstances, the State had satisfactorily shown that defendant freely and voluntarily made the statement, especially because defendant was 19 years old and had prior experience with "the system."

At defendant's trial, Gabriela Garcia, defendant's sister, testified that she had known Saucedo for a year and one-half, and that she lived with him for approximately "half a year."  On October 3, 1994, Garcia was working at the "Alondra" tavern.  When Saucedo arrived at the bar, Garcia left the bar, made a phone call to defendant and then returned to the bar.  Defendant subsequently entered the bar with three other men.  Defendant was holding "a stick" in his hands, and was the first of the four men to walk into the bar.  Garcia further stated that Saucedo was mad when the four men entered the bar, and he threatened her and defendant.  Garcia saw Saucedo pick up a bottle from the bar and throw it at defendant, but she did not see if the bottle actually hit defendant.  Garcia then "laid down" and covered her face with her hands, at which point she heard gunshots.  Garcia looked up and saw defendant and the other three men leave the bar.  Garcia also stated that she answered the questions the police asked her when they arrived at the tavern, but she did not identify the four men because the police "didn't ask [her]."  

Garcia further testified that the police came to her house the following day to tell her Saucedo was dead.  Garcia was taken to the police station where she identified defendant, but the police never informed her of the purpose of the identification.  When asked whether she was questioned by an assistant State's Attorney, Garcia said that she was not.  However, when questioned about the written statement that she gave to Assistant State's Attorney Vaci, Garcia stated that Vaci had taken her statement and that she read the 
Miranda
 warnings contained in her statement out loud before signing the statement.  Garcia admitted that she told Vaci that she left the bar to call defendant when Saucedo arrived, that defendant and three other men subsequently arrived at the bar, and that defendant carried a "brown stick about two foot long."  Upon further questioning regarding her statement to Vaci, Garcia denied telling Vaci that: defendant started beating Saucedo with the stick; Saucedo threw a bottle at defendant after Saucedo was "getting beaten"; there was enough light in the bar that she could see what was happening; and she saw defendant and the three other men get into defendant's car and drive off.  Garcia also stated that after Vaci wrote her statement, she and Vaci read "some of it" together out loud, including the 
Miranda
 warning section, and then she signed it. 

The State then questioned Garcia about testimony she gave before a grand jury on October 6, 1994.  Garcia denied making the following statements to the grand jury that: defendant and his friends "went after" Saucedo; defendant hit Saucedo with a stick; Saucedo threw a bottle at defendant; the four men who went into a car were her brother, cousin and their friends; her brother was driving the car; and the four men "just went and jumped [Saucedo]."  Garcia admitted that she stated to the grand jury that the police did not harm her or threaten her in any way for her testimony.  Garcia also stated that the detective at the police station said "a lot of bad things," including threats to take her children away from her, but Garcia did not tell that to the grand jury because she was scared.

On cross-examination, Garcia testified that she was "arrested" on October 4, 1994, and that she was kept at the police station for three days, during which her request to make a telephone call was denied on the first day, she was kept in a locked room and was treated badly by the police.  More specifically, Garcia stated that two detectives called her a "bitch" and other "bad words,"  and that the female detective pushed a desk at her and threatened to take her children away from her.  Garcia also stated that the police told her she was not under arrest, but when she asked to go home, they told her that she could not.

Detective Karen Hansen's testimony was essentially the same as her testimony at defendant's hearing on his motion to suppress his written and oral statements, except when asked at trial if defendant asked to use the telephone while in custody, Hansen testified that she did not recall "specific details about who [defendant] wanted to call."  Hansen also testified that she was not sure whether defendant used the telephone prior to his transcribed statement, but that "if he wanted to, we would have let him."  When asked if it were true that defendant requested to use the telephone shortly after he arrived at the station and that Hansen told him that he did not need a lawyer, Hansen responded, "No." 

Assistant State's Attorney Vaci testified that he and Detective Foster had a conversation with Garcia on October 5, 1994, during which Garcia was given 
Miranda
 warnings and agreed to make a written statement.  Vaci testified that after the statement was prepared, he had Garcia read the paragraph containing the 
Miranda
 warnings, after which she signed the line beneath the paragraph.  Vaci further stated that he went through the entire statement out loud with Garcia, after which she placed her signature on every page.  The trial court then allowed the State to publish Garcia's statement.  

Vaci was also allowed to read into the record defendant's statement which was taken on October 5, 1994.  In his statement, defendant admitted he went to the bar to "go beat up" Saucedo because Saucedo had hit Garcia; defendant was carrying a pipe when he entered the bar and he knew one of the other men he was with had a gun; when he walked into the bar, he hit Saucedo in the head with the pipe, after which Saucedo threw a beer bottle at him.  Before the jury was sent into deliberations, defendant objected to the State's admission into evidence of his written statement based on the argument that it was coerced.  The trial court overruled defendant's objection and allowed People's Exhibit 28, defendant's statement, to go to the jury.  The jury subsequently found defendant guilty of first degree murder.

Defendant's presentence investigation report disclosed that he was married and had two children, ages two and three.  Defendant had no juvenile adjudications.  In 1992, however, defendant pled guilty to a burglary charge and was sentenced to two years' probation, which was terminated satisfactorily.  In 1994, defendant pled guilty to a battery charge and was sentenced and served two days in the Department of Corrections.  Defendant was raised in a single parent home with his mother.  Defendant had a "good" relationship with his mother, wife and children.  Defendant dropped out of high school in his junior year due to his wife's pregnancy; however, at the time of defendant's arrest, he had been attending Malcolm X College to obtain his GED.  Prior to his arrest, defendant was employed full-time as a laborer earning $9.57 per hour.  

At defendant's sentencing hearing, the trial court indicated that it had "considered all the aspects, aggravation and mitigation as set forth in the Statute and [defendant's] pre-sentence investigation." Specifically, the court stated that it had considered the facts that defendant held a job, was supporting his family, was interested in furthering his education and was attempting to "help [his] sister."  The trial court noted, however, that the "gun would never have been fired had [defendant] not gone there with the intent that [he] did--or had not approached the victim as [he] did."  The trial court then sentenced defendant to 34 years' imprisonment.  This appeal followed.

The first issue raised by defendant is whether the trial court committed reversible error in admitting Garcia's written statement and grand jury testimony as substantive evidence.  Defendant contends that Garcia's written statement and grand jury testimony were obtained by coercion in violation of her fourteenth amendment rights of due process and, since they were admitted as substantive evidence, defendant's right to due process was also violated.   The State contends that not only was Garcia's testimony of police misconduct unsubstantiated by other evidence and undermined by her written statement and grand jury testimony, but her alleged illegal arrest is also not relevant because defendant lacked standing to contest the admission of evidence based on alleged violations of another person's constitutional rights.

We agree with the State that defendant lacked standing to contest the constitutionality of the admission of Garcia's statement and grand jury testimony.  In 
People v. James
, 118 Ill. 2d 214, 514 N.E.2d 998 (1987), the defendant argued that his confession was tainted fruit of the unlawful arrest of his codefendant because the defendant confessed only after being confronted with statements that were illegally obtained from his codefendant.  Our supreme court held that the defendant lacked standing to raise the issue, stating:

"It is a fundamental principle that a claim to suppress the product of a fourth amendment violation can be asserted 'only by those whose rights were violated by the search or seizure itself.'  Since the defendant's own rights were not violated, he may not vicariously seek suppression of evidence as a remedy for such a violation of another's fourth amendment rights."  
James
, 118 Ill. 2d at 226.

The 
James
 court noted that while the defendant may have been "aggrieved by the admission of the product of 
someone's
 illegal arrest, *** his 
personal
 privacy rights have not been violated."  (Emphasis in original.)  
James
, 118 Ill. 2d at 226.  

Defendant argues that 
James
 is distinguishable because Garcia was "never a co-defendant *** nor did the trial court find that she had been arrested."  Therefore, defendant maintains that "
James
 should be limited to only its facts, and not extended to apply to mere witnesses."  We disagree.  This court has recently resolved the same issue in 
People v. Barton
, 286 Ill. App. 3d 954, 677 N.E.2d 476 (1997).  The  
Barton
 court, citing 
James
, held that the 
Barton
 defendant lacked standing to contest the voluntariness of statements made to the police by two 
witnesses
.   
Barton
, 286 Ill. App. 3d at 959.  See also 
People v. Adams
, 283 Ill. App. 3d 520, 669 N.E.2d 1331 (1996) (holding that the personal nature of the fifth amendment privilege precludes a defendant from claiming error based on a trial court's refusal to allow a 
witness
 to assert the privilege at trial).

Defendant also attempts to distinguish 
Adams
, which the State relies on regarding this issue, arguing that "no 5th amendment issues" are presented in the case at bar, and 
Adams
 involved "statements made by a co-defendant," whereas here Garcia "was never charged as a co-defendant."  We first observe that, as indicated above, the 
Adams
 case in fact involved 
witness
 statements and 
not
 statements made by a 
codefendant
.  Moreover, defendant fails to cite to any authority that the lack of standing principle, where a defendant asserts the constitutional rights of another person, would not be applicable to a fifth amendment issue as it is to a fourth amendment issue and, therefore, defendant's "theory" is waived.  See 
People v. Wendt
, 163 Ill. 2d 346, 356, 645 N.E.2d 179 (1994) (holding that when an appellant seeks reversal, theories which are not pursued or advanced with citation to relevant authority are deemed waived).

Defendant next contends that the admission of Garcia's written statement and grand jury testimony (statements) was error because the trial court did not, in addition to finding that the statements met the requirements of section 115--

10.1 of the Code of Criminal Procedure (Code), also make a constitutional inquiry as to whether there was a sufficient evidentiary basis from which the trier of fact could find that the statements were made voluntarily.  The State contends that Illinois law does not require an additional constitutional inquiry regarding the voluntariness or reliability of the statements. 

Section 115--10.1 of the Code provides for the substantive admissibility of prior inconsistent statements.  725 ILCS 5/115--10.1 (West 1992); 
People v. Morales
, 281 Ill. App. 3d 695, 700, 666 N.E.2d 839 (1996).  Paragraphs (a) and (b) of section 115--10.1 require that the prior statement be inconsistent with the offered testimony and that the witness be subject to cross-examination.  After these requirements are met, the court must determine if the statements were either made under oath at a trial, hearing or other proceeding, such as a grand jury proceeding pursuant to paragraph (c)(1), or if they were statements that were written, signed or acknowledged by the witness under oath which narrate, describe or explain an event or condition within the personal knowledge of the witness pursuant to paragraph (c)(2).  
Morales
, 281 Ill. App. 3d at 700.  It is within the sound discretion of the trial court to determine whether or not the testimony of the witness is admissible under section 115--10.1.  
Morales
, 281 Ill. App. 3d at 701.  The trial court's determination of the admissibility of evidence will not be overturned absent a clear abuse of discretion.  
People v. Franklin
, 135 Ill. 2d 78, 552 N.E.2d 743 (1990).

Defendant relies on 
People v. Johnson
, 255 Ill. App. 3d 547, 626 N.E.2d 1073 (1st Dist. 1993), in support of his argument.  In 
Johnson
, 
this court held that before a witness' prior inconsistent statement and grand jury testimony is admissible for constitutional purposes, the trial court must make a finding that there is a sufficient evidentiary basis from which the jury could conclude that the statements were knowingly and voluntarily made, even if the statements meet the requirements of section 115--10.1.  
Johnson
, 255 Ill. App. 3d at 558-59.  Two years after the 
Johnson
 decision, the Fourth District of this court held that an additional requirement for admission of a prior inconsistent statement under section 115--10.1, that the statement was made under circumstances indicating its reliability and trustworthiness, is not required.  
People v. Carlos
, 275 Ill. App. 3d 80, 83-84, 655 N.E.2d 1182 (1995).  The 
Carlos
 court reasoned that because the legislature expressly enumerated circumstances that it concluded would indicate the reliability of a prior statement in subsections (c)(1) and (c)(2), "the fact a statement is admissible under section 115--10.1 of the Code 
already
 demonstrates its reliability, so no 
additional
 evidence of the statement's reliability need be shown."
  (Emphasis in original.)  
Carlos
, 275 Ill. App. 3d at 84.  Similarly, the Second District of this court, in 
People v. Pursley
, 284 Ill. App. 3d 597, 672 N.E.2d 1249 (1996), rejected the holding in 
Johnson
 that an independent determination of voluntariness be made by the trial court, and agreed with the reasoning in 
Carlos
 that such a determination "is exactly the same as section 115-10.1 requires."  
Pursley
, 284 Ill. App. 3d at 608-09.

Defendant argues that we should rule in accordance with 
Johnson
 and hold that the trial court erred by not making a separate finding of reliability for the statements in addition to the finding it made pursuant to the provisions of section 115--10.1 in order to "identify the more broad issue of the Constitution's requirement *** that a defendant's right to due process be protected."  We agree with the State, however, that because the 
Johnson
 holding relies on the decisions in 
United States v. Leslie
, 542 F.2d 285 (5th Cir. 1976), and 
Vogel v. Percy
, 691 F.2d 843  (7th Cir. 1982), which established federal guidelines for the admissibility of substantive evidence under constitutional due process standards, 
Johnson
 is not in accordance with Illinois law.  See also 
Morales
, 281 Ill. App. 3d at 703 (holding that both 
Leslie
 and 
Vogel
 predate the Illinois legislature's enactment of section 115--10.1 which became effective in July 1984, and finding that the statute adequately protects the defendant's constitutional rights and the legislature "clearly intended the statute to be the only inquiry necessary in determining whether to admit prior inconsistent statements").  Because we are not bound by other decisions of the appellate court (
People v. Saunders
, 288 Ill. App. 3d 523, 526, 680 N.E.2d 790 (1997)), we decline to adopt the holding in 
Johnson
 that an additional determination of reliability of prior inconsistent statements is required for due process considerations and, therefore, hold that the trial court did not err by not making a separate finding regarding the reliability of Garcia's prior statements.   Defendant also argues that Garcia's written statement and grand jury testimony were improperly admitted as substantive evidence under section 115--

10.1 because they were not inconsistent with her trial testimony, but contained mere omissions.  The State argues that the record demonstrates "major discrepancies and inconsistencies" between Garcia's trial testimony and her written statement and grand jury testimony.

As stated above, 
it is well within the sound discretion of the trial court to determine whether or not the testimony of a witness is admissible under section 115--10.1.  Additionally, it is well settled that "[w]hen certain evidence is omitted from an earlier statement, but later found to be relevant and testified to at trial, this does not constitute an inconsistency for the purposes of [section 115--10.1]."  
People v. Lawrence
, 268 Ill. App. 3d 327, 333, 644 N.E.2d 19 (1994).  Equally well settled law is that 
although only the inconsistent portions of a prior inconsistent statement are admissible into evidence (
Lawrence
, 268 Ill. App. 3d at 333), a trial court need not make a "quantitative or mathematical analysis" of whether the entire statement of the witness is inconsistent for the entire statement to be admissible (
People v. Salazar
, 126 Ill. 2d 424, 456-58, 535 N.E.2d 766 (1988)).

We agree with the State that Garcia's written statement and grand jury testimony were properly admitted because they were inconsistent with her trial testimony and did not contain mere omissions that were found at trial to be relevant.  For example, whereas Garcia testified at trial that she did not see whether defendant used the stick that he was carrying, she claimed that she did see defendant beat Saucedo with the stick in her prior testimony.  At trial, she testified that she did not know who owned the car that the four men drove away in after Saucedo was shot, but she previously identified the car as defendant's.  Because these and other discrepancies between Garcia's trial testimony and her written statement and grand jury testimony amounted to significant inconsistencies and not mere omissions, we hold that the trial court did not abuse its discretion in admitting Garcia's prior testimony in its entirety.  
Salazar
, 126 Ill. 2d at 456-58.  See also 
Morales
, 281 Ill. App. 3d at 702.  

Defendant next contends that the trial court's dismissal of his motion to suppress his oral and written statements as substantive evidence was erroneous, thereby "violat[ing] defendant's fifth amendment and fourteenth amendment rights under the United States Constitution."  Defendant maintains that because Detective Hansen changed her testimony at trial to state that "she didn't recall specific details regarding who [defendant] wanted to call in response to defense counsel's assertion that [defendant] had requested to use the telephone to contact his mother and an attorney," the testimony he gave during the hearing on his motion to suppress--that he requested to use the telephone to contact his attorney and/or mother upon arrival at the police station--"should have been reconsidered as defense counsel requested, at trial, and viewed with more favor by the trial court given Karen Hansen's back-peddling."  

The State contends that the trial court properly denied defendant's motion to suppress his statements because the evidence showed defendant gave his statements after being advised of his 
Miranda
 rights on several occasions and he never indicated that he was subjected to improper police conduct.  The State argues that defendant's claim is "entirely based on a credibility determination which is in the sole province of the trial judge."

A defendant's request for an attorney is 
per
 
se
 an invocation of his fifth amendment right, and requires that all questioning by authorities cease.  
Edwards v. Arizona
, 451 U.S. 477, 485, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981).  In considering a defendant's motion to suppress his confession, the State has the initial burden of proving, by a preponderance of the evidence, that the defendant made a knowing, intelligent, voluntary waiver of his constitutional rights prior to making his confession.  
People v. Cabellero
, 102 Ill. 2d 23, 464 N.E.2d 223 (1984).  The trial court does not have to be convinced beyond a reasonable doubt when ruling whether a confession was voluntarily given, and the trial court's determination that the confession was voluntary will not be disturbed by a reviewing court unless it is contrary to the manifest weight of the evidence.  
People v. Prim
, 53 Ill. 2d 62, 70, 289 N.E.2d 601 (1972).  The trial court is in the best position to judge the credibility of witnesses testifying at the hearing on a motion to suppress, and  the trial court is not required to accept the defendant's version of the circumstances underlying his making a confession in preference to other testimony.  
People v. Cleesen
, 177 Ill. App. 3d 103, 113, 531 N.E.2d 1113 (1988).  

We find that the record supports the trial court's denial of defendant's motion to suppress his oral and written statements because it indicates that defendant was advised of his 
Miranda
 rights at least four times prior to giving his written statement, he indicated he understood those rights, he agreed that he was treated well by the police, he was an adult and he had prior experience with criminal matters.  See 
In re T.S.
, 151 Ill. App. 3d 344, 350, 502 N.E.2d 761 (1986) (holding that factors that are considered in determining whether a defendant's statement was voluntary include the age of the defendant and whether he received his constitutional rights or was subjected to any physical punishment), and 
People v. Hester
, 39 Ill. 2d 489, 237 N.E.2d 466 (1968) (holding that an additional factor to be considered is the defendant's experience in criminal matters).  Additionally, we find no merit in defendant's argument that based on the alleged "change" in Detective Hansen's testimony at trial, the trial court should have reconsidered his testimony, given at the hearing on his motion to suppress his confession, that he requested and was denied access to an attorney.  The record indicates that Hansen did testify 
at
 
trial
 
that it was not true that defendant requested to use the telephone and that she told defendant that he did not need an attorney.  Moreover, it is for the trier of fact, and not this court, to determine the credibility of witnesses and to resolve conflicts in their testimony.  
People v. Melok
, 149 Ill. 2d 423, 599 N.E.2d 941 (1992). 

Defendant next contends that he was denied a fair trial and effective assistance of counsel based on defense counsel's failure to move to suppress defendant's alleged illegal arrest and the statement of Garcia, which led to defendant's implication in the murder and his subsequent statement as "fruit of the poisonous tree," and counsel's failure to impeach Hansen at trial on her prior inconsistent testimony at the hearing on the motion to suppress.  The State contends that because defendant lacked standing to challenge the admission of evidence based on the alleged violation of another person's constitutional rights, defense counsel's motion to suppress Garcia's statements would have been "inappropriate" and "futile" and, therefore, would not have affected the outcome of the trial.

The two-prong test for determining ineffective assistance of counsel 
as 
set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by Illinois courts, provides that first, a defendant must prove that counsel's representation fell below an objective standard of reasonableness and that those shortcomings were so serious as to deprive the defendant of a fair trial, and second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the trial would have been different.  
People v. Albanese
, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984). 

Under the first prong of the 
Strickland
 test, there is a strong presumption that the action of counsel at trial was the product of sound trial strategy and not a result of incompetence.  
People v. Barrow
, 133 Ill. 2d 226, 247, 549 N.E.2d 240 (1989).  Trial counsel's actions must be reasonable under an objective standard (
Barrow
, 133 Ill. 2d at 249), and it is the defendant's burden to prove that trial counsel's actions were not reasonable (
People v. Whittaker
, 199 Ill. App. 3d 621, 627, 557 N.E.2d 468 (1990)).  Trial "[c]ounsel's performance must not be evaluated in hindsight but rather must be viewed as of the time of his actual performance."  
Whittaker
, 199 Ill. App. 3d at 627.  "The issue of effectiveness is to be determined from the totality of counsel's conduct, not isolated instances, and a reviewing court will not extend its inquiry into areas involving counsel's judgment, discretion, trial tactics or strategy."  
People v. Winchel
, 159 Ill. App. 3d 892, 911-12, 512 N.E.2d 1298 (1987).  Trial counsel's decision to file a motion is a matter of trial strategy which must be given great deference.  
People v. Bryant
, 128 Ill. 2d 448, 458, 539 N.E.2d 1221 (1989).  

Under the second prong of the 
Strickland
 test, "to prevail on a claim that *** trial counsel was ineffective for failing to file a motion to quash and suppress [statements], the defendant must show that the motion would have been granted and that the trial outcome would have been different if the evidence had been suppressed."  
People v. Morris
, 229 Ill. App. 3d 144, 157, 593 N.E.2d 932 (1992).

In light of our finding above that defendant lacked standing to object to the admission of Garcia's statement and grand jury testimony based upon the alleged violation of 
Garcia's
 constitutional rights, we also find that both prongs of the 
Strickland
 test have not been met.  First, defendant cannot meet his burden of proving that trial counsel's strategy was objectively unreasonable and a product of incompetence because 
it is "fundamental" that a motion to suppress the product of a fourth amendment violation can only be asserted by the person whose rights were violated by the search and seizure.  
James
, 118 Ill. 2d at 226.  Secondly, even if defendant had standing to raise such a motion, defendant has failed to meet his burden under the second prong of the 
Strickland
 test by 
showing that the motion would have been granted by the trial court and, thus, would have had an effect on the outcome of his trial
.  Accordingly, defendant has failed to show that his counsel was incompetent for failing to move to suppress Garcia's statement and testimony.

Defendant lastly contends that the trial court improperly sentenced him to 34 years' imprisonment based on the facts that he was 19 years old at the time of the incident, "was not reasonably a violent threat to society," he did not pull the trigger, he supported a wife and two young children, he was continuing to educate himself and he "only went to that bar to protect his sister."  Defendant argues that the trial court failed to consider defendant's potential for rehabilitation and that the court "paid mere lip service to the required considerations of the aggravating and mitigating evidence."

The State contends that the trial court properly exercised its discretion in sentencing defendant because a 34-year sentence is "well within" the statutory range for first degree murder, and defendant had two prior convictions, he instigated the attack on Saucedo, and he knew one of the other men who accompanied him to the LaAlondra bar had a loaded gun.  The State argues that the trial court "fully considered" all the evidence in aggravation and mitigation and defendant's potential for rehabilitation.

The sentencing decisions of a trial court are entitled to great deference and weight because "a trial judge is in a far better position than an appellate court to fashion an appropriate sentence" based on firsthand consideration of the defendant's credibility, demeanor, moral character and other relevant factors.  
People v. Perruquet
, 68 Ill. 2d 149, 154, 368 N.E.2d 882 (1977).  The standard of review is whether the trial court abused its discretion in imposing a defendant's sentence.  
People v. Streit
, 142 Ill. 2d 13, 19, 566 N.E.2d 1351 (1991).  A trial court is not required to give greater weight to the rehabilitative potential of a defendant than to the seriousness of the offense.  
People v. Boclair
, 225 Ill. App. 3d 331, 335-36, 587 N.E.2d 1221 (1992). 

Section 5--4--1(c) of the Unified Code of Corrections provides that, in imposing sentence for a violent crime, the trial court "shall specify on the record the particular evidence, information, factors in mitigation and aggravation or other reasons that led to his sentencing determination."  730 ILCS 5/5--4--1(c) (West 1992).  While the trial court should point to particular evidence or information that led to his sentencing decision (
People v. Juarez
, 278 Ill. App. 3d 286, 295, 662 N.E.2d 567 (1996)), it is not required that the court "detail precisely for the record the exact process by which she determined the penalty[,] *** nor is she required to make an express finding that defendant lacked rehabilitative potential."  
People v. Redmond
, 265 Ill. App. 3d 292, 307, 637 N.E.2d 526 (1994).

In the case at bar, defendant was found guilty of first degree murder and sentenced to 34 years' imprisonment, which was within the sentencing range of 20 to 60 years' imprisonment.  730 ILCS 5/5--8--1(a)(1)(a) (West 1997).  The trial court's statements at the sentencing hearing clearly indicate that the court considered the factors in aggravation and mitigation, as well as defendant's rehabilitative potential as indicated in his presentence report.  While the trial court duly noted that defendant was holding a job, supporting a family and "trying to get ahead," it also had to consider defendant's involvement in the murder of Saucedo, and that defendant was previously convicted two times for battery.  Under these circumstances, we cannot find that the trial court abused its discretion in imposing defendant's sentence.

We briefly note that the cases cited by defendant in which reviewing courts reduced the defendants' sentences are distinguishable from the case at bar.  In both 
People v. Wilkins
, 36 Ill. App. 3d 761, 344 N.E.2d 724 (1976), and 
People v. Horton
, 43 Ill. App. 3d 150, 356 N.E.2d 1044 (1976), the defendants were only 17 years old and had no prior criminal record.  In 
People v. Steffens
, 131 Ill. App. 3d 141, 475 N.E.2d 606 (1985), the defendant was a juvenile.  Moreover, in 
People v. Brown
, 243 Ill. App. 3d 170, 612 N.E.2d 14 (1993), 
People v. Margentina
, 261 Ill. App. 3d 247, 634 N.E.2d 29 (1994), and 
People v. Gibbs
, 49 Ill. App. 3d 644, 364 N.E.2d 491 (1977), the defendants' sentences for first degree murder were 45-50 years' imprisonment, as opposed to defendant's 34 years' sentence in this case.

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

GORDON and CAHILL, JJ., concur.